United States District Court
District of Massachusetts

|  |  |
|---|---|
| RONALD BARGANTINE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. |
|  | ) 13-11132-NMG |
| MECHANICS COOPERATIVE BANK, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

MEMORANDUM & ORDER

GORTON, J.

This case arises from a series of misunderstandings between
plaintiff Ronald Bargantine ("Bargantine" or "plaintiff") and
representatives of defendant Mechanics Cooperative Bank ("the
Bank" or "defendant"). The miscues began with Bargantine's
removal of a telephone system and ended with his unnecessary
arrest and incarceration. Bargantine was cleared of the
criminal charge but now seeks to hold the Bank legally
responsible for its role in the incident. Pending before the
Court are the Bank's motions to dismiss plaintiff's claims under
Mass. Gen. Laws c. 231, §59H, and Fed. R. Civ. P. 12(b)(6). For
the reasons that follow, the Court will allow defendant's
motions, in part, and deny them, in part.

-1-

## I.   **Factual and Procedural Background**

Before 2006, plaintiff Bargantine was employed by Black Box
Network Services ("Black Box"), a company providing telephone
networking services in New England.  In 2006, Bargantine left
Black Box and founded Realtime One, LLC ("Realtime").  He began
servicing the telephone system at J&J Marine Fabricating ("J&J
Marine" or "the Marina") for Black Box and continued doing so
after he went into his own business.  In the summer of 2011, J&J
Marine owed Realtime approximately $9,000.  In August, 2011,
Bargantine learned that the Bank had taken possession of J&J
Marine's assets.

Bargantine spoke with Nancy Stokes ("Stokes"), Bank Senior
Vice President, concerning the debt.  After Bargantine explained
the situation, Stokes agreed that he could remove J&J Marine's
telephone system.  She understood that Bargantine owned the
telephone system and had leased it to J&J Marine but she
subsequently learned that J&J Marine owned the system, whereupon
she requested Bargantine to return the equipment.

After several requests to Bargantine, Stokes contacted the
Somerset, Massachusetts Police Department ("Somerset Police") on
September 19, 2011, regarding Bargantine's failure to return the
equipment.  The Somerset Police conducted an investigation,
resulting in a criminal complaint for larceny over $250 being
issued against Bargantine on October 6, 2011.  An arraignment

-2-

was set in Fall River District Court for December 21, 2011. The complaint was sent to Bargantine's former address, then inhabited by his ex-wife, and Bargantine never received it. He subsequently failed to appear at his arraignment and a default warrant was issued against him.

After the initial criminal complaint, Bargantine and his ex-wife had several conversations with Bank representatives concerning the telephone system. Thereafter, Bargantine agreed to return and reinstall the telephone system and Stokes indicated that she would inform the Somerset Police when the telephone system was reinstalled. Bargantine construes the agreement with Stokes as an oral contract but the Bank does not.

Before the arraignment in December, 2012, Stokes emailed Steven Anderson ("Anderson") of J&J Marine, requesting that he inform her when the telephone system was reinstalled so that she could "do something about the pending charges." Anderson emailed Stokes on December 16, 2011, that the reinstallation was 92% complete and that Bargantine would finish the reinstallation three days later. The parties dispute the date on which Stokes was finally informed that Bargantine had completed the reinstallation. Bargantine claims that Stokes was aware of the completion of the reinstallation of the system in "late December" because of a document she submitted to the Somerset Police on February 1, 2012. The Bank contends that Stokes' statement was

-3-

mistaken and that, in fact, Anderson first informed Stokes of the reinstallation on January 9, 2012.

On January 9, 2012, Bargantine was stopped for a traffic violation in Rhode Island. After discovering the outstanding default warrant, the responding officer arrested Bargantine, who was subsequently held for three days in the Adult Correctional Institution in Cranston, Rhode Island. There, he underwent several upsetting and unpleasant prison-related experiences, felt "terrified" and slept "very little."

After Bargantine was released, he suffered emotional distress and depression for which he underwent therapy and was prescribed medication. Bargantine's arrest was publicized in the media which led to the resignation of Realtime's business manager and, after a breakdown in communication, caused Bargantine to terminate a salesperson. Realtime's revenues fell by more than two-thirds, resulting in the lay-off of a third employee and the inability to sustain a full-time business manager. Bargantine also expended approximately $4,500 in legal fees for his defense of the criminal charge.

On May 8, 2013, Bargantine filed a complaint against the Bank seeking damages and injunctive relief ordering it to assist plaintiff in expunging his criminal record. Plaintiff alleges that defendant is liable for breach of contract (Count I), negligence (Count II), negligent misrepresentation (Count III),

-4-

negligent infliction of emotional distress (Count IV), malicious

prosecution (Count V), abuse of process (Count VI), intentional

infliction of emotional distress (Count VII) and unfair trade

practices under Mass. Gen. Laws, Ch. 93A (Count VIII).

Defendant responded on July 15, 2013, and moved to dismiss under

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

relief can be granted and under Mass. Gen. Laws Ch. 231, § 59H,

also known as the Massachusetts "anti-SLAPP" statute.   On

September 19, 2013, defendant moved to strike portions of

Bargantine's affidavit.  A hearing was held on October 24, 2013,

after which the Court took defendant's motions under advisement.

## IV.  Defendant's Special Motion to Dismiss under M.G.L. c. 231, §59H

### A.  Legal Standard

The anti-SLAPP (Strategic Lawsuit Against Public

Participation) statute allows civil defendants to resolve

expediently lawsuits "designed to deter or retaliate against

individuals who seek to exercise their right of petition."

Keegan v. Pellerin, 920 N.E.2d 888, 891 (Mass. App. Ct. 2010).

The Massachusetts Supreme Judicial Court has outlined a two-step

procedure for special motions to dismiss under § 59H.   To

prevail, the movant (the Bank) must first make a threshold

showing that the claim of the non-movant (Bargantine) is "based

on" the movant's protected petitioning activities and has no

other "substantial basis." Duracraft Corp. v. Holmes Prods. Corp., 691 N.E.2d 935, 943 (Mass. 1998). If that showing is made, the burden shifts to Bargantine to demonstrate by a preponderance of the evidence that "the petitioning activities lacked any reasonable factual support or any arguable basis in law." Fustolo v. Hollander, 920 N.E.2d 837, 840 (Mass. 2010). In this inquiry, courts consider pleadings and affidavits without indulging inferences in favor of the non-moving party. M.G.L. c. 231, § 59H; S. Middlesex Opportunity Council, Inc. v. Town of Framingham, No. 07-12018-DPW, 2008 WL 4595369, at *10-11 (D. Mass. Sept. 30, 2008).

## B.  Analysis

Defendant argues that the complained of conduct "consists entirely of its accurate report to the Somerset Police" which is "petitioning activity" under § 59H. Defendant asserts that its police report had reasonable factual and legal support and that plaintiff's own missteps caused his harm. In response, plaintiff contends that he has valid claims with a substantial basis other than defendant's petitioning activity because some allegations concern non-petitioning activity that occurred before and after the police report was submitted. Plaintiff maintains that the statute must be interpreted so as not to inhibit plaintiff's own right to petition. Plaintiff also argues that the police report

-6-

lacked any reasonable factual support or any arguable basis in
law and that defendant caused plaintiff's injuries.

### 1. Substantive Nature of Anti-SLAPP Motions

Although this Court has previously considered anti-SLAPP
motions to be procedural remedies inapplicable in federal
courts, see, e.g., id. at *9, the First Circuit Court of Appeals
recently held that Maine's anti-SLAPP statute applied to state
law claims brought in federal diversity actions. See Godin v.
Schencks, 629 F.3d 79, 92 (1st Cir. 2010). The Godin court
found that neither Fed. R. Civ. P. 12(b)(6) nor Rule 56 were
intended to control the specific issues in Maine's anti-SLAPP
statute, concluding that the law "substantively alters the type
of harm actionable." Id. at 89. The First Circuit also held
that enforcing the Maine anti-SLAPP law in federal diversity
actions comported with the twin aims of Erie R. Co. v. Tompkins,
304 U.S. 64 (1938), namely to discourage forum-shopping and to
promote equitable administration of the law. Godin, 629 F.3d at
86-87.

Godin considered only Maine's anti-SLAPP statute and its
holding has not been extended to the anti-SLAPP laws of other
states within the First Circuit. The Massachusetts anti-SLAPP
statute is, however, in all respects identical to the Maine
statute. Therefore, the Court will extend Godin's holding and

-7-

find the Massachusetts anti-SLAPP statute applicable as
substantive law to diversity cases brought in federal court.

### 2. The First Prong of § 59H: Whether Plaintiff's Claims Are "Based On" Defendant's Petitioning Activity

The special movant must first prove by a preponderance of
the evidence that the relevant claims are based only on the
movant's petitioning activities and "have no substantial basis
other than or in addition to the petitioning activities." Wenger
v. Aceto, 883 N.E.2d 262, 266 (Mass. 2008). Defendant asserts
that plaintiff's claims rest on the defendant's police report
while plaintiff argues that his complaint alleges tortious
conduct occurring before and after the petitioning activity.

Three of plaintiff's claims rest entirely on defendant's
police report and are therefore subject to § 59H: malicious
prosecution (Count V), abuse of process (Count VI) and
intentional infliction of emotional distress (Count VII). In
those claims, plaintiff invokes as their bases the act of
"institut[ing] criminal proceedings", "using criminal process"
and "falsely reporting to the police", respectively.

Massachusetts courts have denied special motions to dismiss
abuse of process and malicious prosecution claims under § 59H
when, although the conduct complained of was petitioning
activity, additional evidence existed that "independently
demonstrated [the movant's] ulterior motive." See Keystone

-8-

Freight Corp. v. Bartlett Consol., Inc., 930 N.E.2d 744, 752 (Mass. App. Ct. 2010). In this case, the additional conduct of which plaintiff complains does not, however, corroborate his allegations of defendant's "malice" or "illegitimate purposes." See, e.g., Adams v. Whitman, 822 N.E.2d 727, 731 (Mass. App. Ct. 2005) ("[T]he key to survival of a party's abuse of process claim seems to be whether the party relies on some other conduct by the special movant, apart from merely obtaining the process, that amounted to an affirmative, subsequent misuse of the process to further the special movant's alleged ulterior purpose."). Instead, plaintiff's other claims merely assert additional, though related, breach of contract and negligence claims against defendant.

Plaintiff's remaining claims allege non-petitioning conduct. Count I claims breach of a contract purportedly made prior to the police report while Counts II (negligence), III (negligent misrepresentation) and IV (negligent infliction of emotional distress) allege conduct whereby defendant allegedly assumed a duty of care toward plaintiff or induced his justifiable reliance. Count VIII (violations of M.G.L. Chapter 93A) is based in large part on defendant's non-petitioning activity. Therefore, defendant's special motion under § 59H to dismiss Counts I, II, III, IV and VIII will be denied.

-9-

### 3. The Second Prong of § 59H: Whether Defendant's Petitioning Activity Lacks "Any Reasonable Factual Support or Any Arguable Basis In Law" and Caused "Actual Harm"

For the three claims based on petitioning activity, the Court must determine whether plaintiff has proven by a preponderance of the evidence that the petitioning activities "lacked any reasonable factual support or any arguable basis in law." Fustolo v. Hollander, 920 N.E.2d 837, 840 (Mass. 2010).

#### a. Constitutionality

Plaintiff contends that the second prong of § 59H is "unconstitutional on its face" and must be construed not to "infringe upon a non-movant's constitutional right to petition." Plaintiff relies on a recent case from Maine's Supreme Judicial Court that interpreted Maine's anti-SLAPP law to avoid vitiating petitioning rights by non-movants in anti-SLAPP cases. See Nader v. Maine Democratic Party, 41 A.3d 551 (Me. 2012). Defendant did not address this issue in its special motion to dismiss.

Although plaintiff invokes Nader, Maine's previous procedural requirements for anti-SLAPP statutes are inapplicable to Massachusetts. Nader emphasized that the problems of Maine's anti-SLAPP statute stemmed from its judicially created "converse summary-judgment-like standard" which "require[d] the court to view evidence in the light most favorable to the moving party." Id. at 562. The Nader court also noted, however, that a "plain

-10-

reading" of Maine's anti-SLAPP law "does not dictate" that
standard. Id. To correct the constitutional defect, the Nader
court held that the burden of a non-moving party on an anti-
SLAPP motion is to make a prima facie showing that the
petitioning activities had factual and legal support. Id. at
563.

Despite the textual similarities of the two statutes,
Massachusetts courts have not embraced a standard for special
motions under § 59H similar to that rejected by Nader, instead
consistently requiring only that a non-moving party meet its
burden by a preponderance of the evidence. See S. Middlesex
Opportunity Council, 2008 WL 4595369, at *12. Because there
does not appear to be a constitutionally significant difference
between Maine's standard requiring a prima facie showing and
Massachusetts' standard requiring a preponderance of the
evidence and plaintiff does not challenge the standard actually
used in Massachusetts courts, the Court finds that the second
prong of § 59H is constitutional as currently interpreted in
Massachusetts courts.

### b. Application

The legal guidepost for this inquiry is the "reasonable
factual support" and "arguable basis in law" of the petitioning
activities. Fustolo, 920 N.E.2d at 840. Therefore, the question
before the Court at this stage is whether the police report

-11-

"contains any reasonable factual or legal merit at all." Wenger
v. Aceto, 883 N.E.2d 262, 267 (Mass. 2008).

Defendant contends that the report to the police was well-
founded because the police investigated the issue and found it
sufficiently meritorious to issue a criminal complaint.
Plaintiff responds that the police report was "facially devoid
of factual and legal support" and could only represent the
Bank's "unlawful purpose" of coercing plaintiff's compliance.

Defendant's argument is persuasive.  Plaintiff underscores
that the criminal complaint was eventually dismissed but the
ultimate disposition of a complaint is not dispositive of its
factual or legal support. Wenger, 883 N.E.2d at 268.  Here, the
undisputed facts and the independent police investigation refute
plaintiff's contention that "no reasonable person" could find a
legal basis for the petitioning activity. See Baker, 750 N.E.2d
at 962 n.20.

The Court finds that defendant's police report had
"reasonable factual support" and, therefore, Counts V (malicious
prosecution), VI (abuse of process) and VII (intentional
infliction of emotional distress) will be dismissed.[1]

_____

[1] The Court need not inquire into the requirement in § 59H that
plaintiff also demonstrate that he sustained "actual harm"
because of defendant's petitioning activities.

-12-

## V.   Defendant's Motion to Strike Portions of Affidavit of Ronald J. Bargantine

Defendant moves to strike three statements that contain

"second-level hearsay" in the affidavit of plaintiff Bargantine

and to preclude their consideration in the Court's ruling on

defendant's special motion under § 59H.  This dispute is,

however, easily avoided by the Court.  The first two statements

relate to the alleged formation of the oral agreement between

Stokes and plaintiff in December, 2011, and the third statement

concerns plaintiff's alleged harm.  None of the statements is,

however, applicable to the Court's inquiry with respect to §

59H. See Kobrin v. Gastfriend, 821 N.E.2d 60, 69 (Mass. 2005)

(declining to rule on dispute over affidavit after "hold[ing]

that this case is beyond the anti-SLAPP statute's reach").  The

first two statements need not be addressed because the alleged

contract is only at issue in Count I (breach of contract) and

Count VIII (chapter 93A) which are not claims "based on"

petitioning activity.  The third statement need not be addressed

because plaintiff could not demonstrate that defendant's

petitioning activities lacked merit and, thus, it is unnecessary

to evaluate plaintiff's "actual harm" under § 59H.  Therefore,

defendant's motion to strike will be denied as moot.

-13-

## VI. Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, a pleading must contain a claim to relief that is "plausible," not just a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). A district court assesses a complaint's sufficiency in two steps. Manning v. Boston Medical Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013). First, a court ignores conclusory allegations mirroring legal standards. Id. Second, it accepts the remaining factual allegations as true and draws all reasonable inferences in the plaintiff's favor, thereafter deciding if the plaintiff would be entitled to relief. Id. A court may also consider documents attached to or incorporated in the complaint and other undisputed documents. Wilborn v. Walsh, 584 F. Supp. 2d 384, 386 (D. Mass. 2008).

### B. Application

#### 1. Count I (Breach of Contract)

Plaintiff claims that he and the Bank formed an oral contract that the Bank breached by failing to inform the Somerset Police that he had reinstalled the telephone system. Plaintiff states that, in a conversation with Anderson, plaintiff "agreed to reinstall the phone system" and in return, Anderson indicated to plaintiff that the Bank

-14-

agreed to call the Somerset Police Department and inform them that [plaintiff] has returned the telephone system to its prior condition and that the Bank would take no further action against [plaintiff].

Defendant responds that the alleged contract is unsupported by valid consideration and that plaintiff has failed to allege damages recoverable in contract.

To succeed on a breach of contract action, plaintiff must prove (1) an offer, (2) an acceptance, (3) consideration, (4) breach and (5) damages. Canney v. New England Tel. & Tel. Co., 228 N.E.2d 723, 728 (Mass. 1967). Consideration, the first element at issue here, requires imposing a legal detriment on the promisee and legal benefit on the promisor. Ekchian v. Thermo Power Corp., N. 00-P-1826, 2002 WL 31856404, at *3 n.8 (Mass. App. Ct. 2002). Defendant does not dispute the alleged contract's offer and acceptance.

The facts undergirding the alleged contract's consideration are disputed in part. Defendant claims that plaintiff was obligated to return the telephone system and that plaintiff's promise therefore amounts to "a promise to pay one for doing that which he was already under a prior legal duty to do." See Parrot v. Mexican Cent. Ry. Co., 207 Mass. 184, 194 (1911). Plaintiff responds that although he was under a legal obligation to return the telephone system, he was not obligated to spend time "reinstalling and reprogramming a faulty system that was

not working prior to its removal." Assuming the veracity of

plaintiff's submission and drawing reasonable inferences in his

favor, it is plausible that an oral contract was formed.

Defendant submits that plaintiff's damages are not

recoverable in a breach of contract action because they are

based on plaintiff's suffering rather than expectancy,

incidental or consequential damages and that the damages

relating to Realtime are not applicable to plaintiff's suit.

Mental suffering is generally not recoverable in contract but

exceptions exist where a breach "is of a nature particularly

likely to produce emotional distress." St. Charles v. Kender,

646 N.E.2d 411, 413 (Mass. App. Ct. 1995). Allowing such

damages in a contract action depends on "the subject matter and

background of the contract." Sullivan v. O'Connor, 296 N.E.2d

183, 189 (Mass. 1973). Here, plaintiff has undoubtedly alleged

a contract of a nature likely to produce emotional distress.

Defendant's response concerning the impropriety of

plaintiff's alleged damages from Realtime is unavailing because

plaintiff pled sufficient personal damages. Accordingly, the

Court will deny defendant's motion to dismiss Count I.

### 2. Count II (Negligence)

Plaintiff's negligence claim asserts that defendant

"assumed a duty of care towards plaintiff" when it agreed to

notify the police that plaintiff had reinstalled the telephone

-16-

system and that defendant subsequently breached that duty. Defendant responds that no duty existed and that defendant did not proximately cause plaintiff's damages.

A negligence action requires proof of a duty, breach of that duty, causation and damages. See Siegal v. Am. Honda Motor Co., Inc., 921 F.2d 15, 17 n.4 (1st Cir. 1990). However, a "failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." Anderson v. Fox Hill Village Homeowners Corp., 676 N.E.2d 821, 823 (Mass. 1997). In this case, plaintiff alleges not "negligence in the manner of performing [a] duty" but a "mere failure to perform it." Anderson, 676 N.E.2d at 823. Because no such extra-contractual duty exists, plaintiff's negligence claim cannot succeed. See Remy v. MacDonald, 801 N.E.2d 260, 262 (Mass. 2004). Thus, the Court need not address defendant's causation arguments and will allow defendant's motion to dismiss Count II.

### 3. Count III (Negligent Misrepresentation)

The Court can swiftly dispatch plaintiff's negligent misrepresentation claim. Plaintiff's claim relies on defendant's supposed misrepresentation that if he reinstalled the Marina's telephone system, the Bank would notify the Somerset Police to clear the charge. Defendant moved to dismiss that claim because a negligent misrepresentation claim cannot be

-17-

founded upon "[f]alse statements of opinion, of conditions to exist in the future, and promises to perform an act." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 49 (Mass. 2009). This accurate statement of law is wholly applicable to these facts and plaintiff's negligent misrepresentation claim cannot succeed. Indeed, plaintiff concedes this deficiency in his response. Therefore, defendant's motion to dismiss Count III will be allowed.

### 4. Count IV (Negligent Infliction of Emotional Distress)

Because negligence is an element of negligent infliction of emotional distress, plaintiff's claim faces the same hurdle with which his negligence claim was confronted, namely that the failure to perform under a contract is not an actionable tort absent a separate duty to act. See Anderson, 676 N.E.2d at 823. Accordingly, the Court will allow defendant's motion to dismiss Count IV.

### 5. Count VIII (Unfair Trade Practices/Chapter 93A)

Plaintiff's final claim is that defendant engaged in "unfair and deceptive acts" in violation of Mass. Gen. Laws, Chapter 93A, through acts including the Bank's negligence, breach of contract, malicious prosecution and abuse of process. Defendant argues that the Chapter 93A claim should be dismissed because defendant's police report did not take place in "trade

-18-

or commerce," defendant's conduct was not unfair or deceptive as a matter of law and plaintiff did not suffer a "loss of money or property" as a result of defendant's alleged misconduct.

Massachusetts courts hold that "[a]ctionable c. 93A conduct must occur 'in a business context.'" McGonagle v. Home Depot, U.S.A., Inc., 915 N.E.2d 1083, 1088 (Mass. App. Ct. 2009) (citing Lantner v. Carson, 373 N.E.2d 973, 978 (Mass. 1978)). To apply Chapter 93A to a non-consumer context, a court must determine that the interaction was "commercial in nature" and then find that "the parties were both engaged in 'trade or commerce' and therefore acting in a 'business context.'" Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191 (Mass. 1997). While liability under Chapter 93A requires services to be "offered generally by a person for sale to the public," Manning v. Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1983), the statute is not limited to transactions that "take place only in the ordinary course of a person's business or occupation." Begelfer v. Najarian, 409 N.E.2d 167, 176 (Mass. 1980). Chapter 93A does not, however, reach "strictly private transactions" or the mere exercise of "contractual or legal remedies." Id. at 175-76.

While the general context of the subject interaction concerns "trade or commerce," the specific circumstances were quite personal. Plaintiff alleges misconduct based on defendant's submission of and failure to correct an allegedly

-19-

false police report, not based on the Bank's provision of

services offered generally to the public. See Manning, 444

N.E.2d at 1265.   While both defendant and plaintiff may offer

their respective business services to the general public, an

agreement to resolve a dispute concerning a police report is not

part of either party's "commercial activities with regard to

consumers, competitors, or other business persons." Id.   The

actual activities engaged in by the parties are not sufficiently

"commercial in nature" under the Chapter 93A claim and the

parties other arguments need not be addressed. See Begelfer, 409

N.E.2d at 175.   Therefore, defendant's motion to dismiss Count

VIII will be allowed.

### ORDER

In accordance with the foregoing,

1) defendant's special motion to dismiss under Mass. Gen.
   Law, c. 231, § 59H is, with respect to Counts V, VI and
   VII, **ALLOWED**, but is, with respect to Counts I, II, III,
   IV and VIII, **DENIED**;

2) defendant's motion to strike portions of plaintiff
   Bargantine's affidavit is **DENIED** as moot; and

3) defendant's motion to dismiss under Fed. R. Civ. P.
   12(b)(6) is, with respect to Counts II, III, IV and VIII,
   **ALLOWED**, but is, with respect to Count I, **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated November 26, 2013

-20-